UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAKE PAUL HEINEY,

                Petitioner,                Case No. 2:19-cv-12474
                                         Hon. Sean F. Cox

v.

HEIDI E. WASHINGTON,

                Respondent.
_____/

## OPINION DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Jake Paul Heiney filed this petition for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted following a bench trial in the Monroe Circuit Court of two counts of fourth-degree criminal sexual conduct. The trial court sentenced Petitioner to ninety days in jail and five years of probation. Because none of Petitioner's claims merit habeas relief, the petition will be denied.

I

Petitioner, a physician, was charged in connection with physical examinations he performed on two of his patients. The prosecution asserted that Petitioner fondled the patients' breasts for the purposes of sexual arousal or gratification and in a manner that was medically recognized as unethical or unacceptable. *See* MICH. COMP. LAWS § 750.520(q); 520e(1)(b)(iv).

At trial, the first patient, Ms. Earnest, testified that during an April 2015 medical examination for shoulder pain, Petitioner touched her bare breast and nipple. (ECF No. 17-9, at 23-24.) Earnest did not go to the police until she saw an article in the Toledo Blade about another woman making a similar complaint against Petitioner in Ohio. (*Id*. 32.) Due to the nature of her medical complaints, however, which included complaints about her breast, and her description of how Petitioner contacted her breasts, the trial court directed a verdict in favor of Petitioner with respect to the charges involving Earnest. The court found there was reasonably doubt as to whether the contact was medically unethical or unacceptable (*Id.* 233-34.)

The second patient, Ms. Gray, testified that she grew up with Petitioner and they had attended the same high school. (*Id.* 69.) At an April 2015 appointment with Petitioner, Gray complained of lower back pain and stiffness in her neck. (*Id.* 76, 79.) Gray never told Petitioner that she had pain in her chest or breast area, and she never described pain radiating to her chest or breast. (*Id.* 75, 80, 97, 103.)

Petitioner started by examining Gray's lower extremities (*Id.* 76, 102). He then examined her upper body. He pulled her gown and bra off her shoulder and grabbed her breast and squeezed it twice. (*Id.* 77-78). Petitioner did not explain to Gray why he was touching her breasts. (*Id.* 105.)

Gray demonstrated for the court the manner in which Petitioner squeezed her breasts: "The bra came down, grab, squeeze, whatever you call this motion. This. It

was not this. It was this type of motion." (*Id.* 78.) The exam was not the same as a breast exam conducted at a gynecologist's office (*Id.* 106.) Because the court thought it to be "the critical part of everything that we've been listening to," it had Gray demonstrate the motion used by Petitioner on her breasts again on redirect examination. (*Id.* 118-19.)

After the appointment, Gray felt confused. About an hour later she called her friend and told her that, "I just went and saw Jake. You're not going to believe this. I had my exam. He touched my boobs." (*Id.* 85.) She felt uncomfortable enough about the exam that she also told her mother, her sister, and a few friends who were nurses. (*Id.* 85-87.)

Nevertheless, about a week later Gray allowed Petitioner to perform an injection procedure under anesthesia at the hospital. (*Id.* 82, 87.) She tried to convince herself that Petitioner's actions were just a normal part of the examination. (*Id.* 87.)

Several months later, Gray saw a news article about allegations made by women in Ohio against Petitioner, and she called the police. (*Id.* 89, 151.) Petitioner later texted Gray and asked her to speak on his behalf regarding the allegations that were being made against him. (*Id.* 92.) He tried to explain that that part of the examination, while uncomfortable, was necessary. (*Id.*)

Ms. Stone testified at trial as a similar-acts witness. Stone testified that she saw Petitioner in November 2014 for pain in her shoulder. He administered several injections. (*Id.* 127.) At a follow up appointment, Petitioner asked Stone to remove her arm from her bra and tank top. He told her that pain from the breast can cause or radiate to the arm and cause pain in the arm. (*Id.* 143.) He asked if he could do an exam of her breast and she consented. (*Id.* 143.) He exposed her left breast, pushed on it with one or two fingers and then pushed and squeezed the entire breast with his thumb and fingers. (*Id.* 145, 163-164.)

The breast exam was not like the breast exams Stone had experienced at the gynecologist. (*Id.* 152-53.) Stone told several others about her experience. She called another orthopedic surgeon's office, and she contacted the state medical board. (*Id.* 157.)

Ms. Okulski testified as another similar-acts witness. Okulski saw Petitioner in Ohio for shoulder pain. (*Id.* 169.) She told Petitioner that she did not have any breast discharge or any breast pain. (*Id.* 170.) Petitioner had Okulski remove her left arm from her tank top and bra strap and gave her "like a breast exam and asked me if that hurt." (*Id.* 171.)  He pressed around her breast area with his fingers. He held her arm up and conducted a second breast exam. Petitioner performed a third breast exam and cupped her breast for a few seconds. (*Id.* 185.) Okulski did not understand

why he was doing the breast exam. The exam was not like any breast exam that Okulski had experienced with her gynecologist. (*Id.* 176.)

Petitioner then had Okulski stand up so that he could look at her lower back. He was behind her and asked her to touch her toes. (*Id.* 178.) He pulled her pants and underwear to her knees. (*Id.* 178.) He pressed on her hips and buttocks and touched her inner thigh, and his fingers brushed her vagina. (*Id.* 188.) After the appointment she called the police.

Detective Laura Bliss testified that she was employed with the Sylvania Police Department in Ohio. (*Id.* 192.) She investigated the case against Petitioner. During the investigation, she spoke with Petitioner. Bliss asked him about his examination of Okulski. She asked Petitioner how he conducted shoulder evaluations and asked if it would include a breast examination. Petitioner indicated that he would not perform a breast examination unless there was a complaint "about pain radiating or something of that nature." (*Id.* 195.) He indicated that if he were to conduct a breast examination that he would use his fingers to palpate the area including the pectoral muscle. (*Id.* 196.)

Brian Kinsella testified that he was employed by an independent orthopedic organization and was assigned to work at Petitioner's clinics. (*Id.* 206.) Kinsella wrote out prescriptions and set up injections. (*Id.* 212.) Kinsella had seen Petitioner

conduct many shoulder examinations. He observed Petitioner conduct breast exams as a part of shoulder evaluations. (*Id.* 209.)

Kinsella recalled Christy Gray's visit to the office in April 2015. Kinsella was in the room with Petitioner and Gray during the entire appointment. He did not see Petitioner do anything inappropriate during that exam. (*Id.* 221.) He did not know whether Petitioner touched Gray's breast because he was standing behind her. He did see that Petitioner was examining her in that area beneath the gown. (*Id.*)

Dana Lefever testified for the defense that she was a medical assistant and had worked with Petitioner. Petitioner always wanted someone in the room with him during examinations. (*Id.* 238.) Lefever recalled Gray's appointment in April 2015. Lefever had observed Petitioner conduct physical examinations. She observed him palpate breast tissue. The breast examination was not the same as a gynecological breast exam. (*Id.* 243.)

Nicole Vernon testified that she worked with Petitioner checking patients in and out and scheduling procedures. Gray never complained about any of the examinations at the office.

The trial court found Petitioner guilty of two counts of fourth-degree criminal sexual conduct relating to Gray:

> The defendant is charged in this matter of two counts of criminal sexual conduct on [Ms.] Gray. The elements of those offenses are that the defendant did intentionally touch Ms. Gray's breasts. Said touching was done for sexual purpose or could be reasonably construed as having

been done for a sexual purpose. The defendant engaged in medical treatment or examination of the victim in a manner or for purposes which are medically recognized as unethical or unacceptable.

It's clear the prosecutor has the burden of proof to show all of these elements beyond a reasonable doubt. The Court heard the testimony of a number of witnesses. Four women testified, two who are victims in this matter and two who were 404(b) witnesses. Many things were consistent about the women's testimony. Not one of the women said they had pain in her breast, discharge, or complained of any pain radiating to or from the breast. They all said that they were alone with the defendant except for check in and check out. None recalled the defendant wearing gloves. None, other than Ms. Stone, received any explanation as to the nature of the exam that they were receiving. All of them discussed it with friends, parents, other medical professionals almost immediately after it happened.

Now, perhaps now is a good time to say that I don't disbelieve Ms. Earnest just because I dismissed those claims but she struggled with memory issues and there was a significant medical issue-- medical issue pertaining to cysts and a mass removal as well as the testimony that Dr. Heiney palpa-- or palpated her breasts.

Now, I don't quite see the connection between the women as the defense does. I don't find it unusual for there to be confusion. I mean there was testimony did that happen? Perhaps I'm missing something. You know, there's the issue of physical authority. I really-- I don't see that as an unusual reaction here. I also don't think it's unusual that one of the 404(b) witnesses consulted with an attorney. [I] mean that happened multiple times to me when I was an attorney. People would come and talk to me about that. That's why we're called attorneys and counselors at law.

Detective Bliss testified that she spoke to the defendant in May of 2015. Dr. Heiney said breast exams only happen if pain is rad-- radiating from the breasts or discharge. The patient would have to raise it and then I would palpate the breast and the pectoral muscle.

Christy Gray is the only one out of all of these women who didn't have shoulder pain. She went to a seminar, I think at Quimby's she said,

the defendant was giving with respect to sacroiliac surgery. Defendant's exhibit B is her progress notes, her medical records. In there the chief complaint is bilateral knee pain and weakness, bilateral hand numbness, right sacroiliac joint disease, right lower back pain and weakness, right lower extremity numbness and pain.

Her testimony was that the defendant was on both sides of her. On each time he grabbed the gown and the bra and pulled it down and then squeezed the breasts twice. He did that on both sides of her. She did not, as previously stated, complain about any pain radiating to or from the breast. Her testimony was quite definitive. He didn't palpate her breasts but he grabbed it and squeezed. She used her hands to kind of show how that happened.

It's true she didn't call the police right away. She did tell her mom, her friends, and her sister almost immediately. She testified she didn't want to believe it but she definitively testified that within 15 minutes of reading the Toledo Blade article she called first the Sylvania Police and then the Monroe County Sheriffs. I don't really know what to make of the phone call one way or the other. I mean that could-- could go either way and for me to comment any further on the phone call would be just speculation.

I do find, however, after review of all the evidence, the testimony of the four women who I mentioned as well as Detective Bliss, Brian Kinsella, Dawn Lefevers, and Nicole Vernon that the prosecutor has proven beyond a reasonable doubt that the defendant is guilty of criminal sexual conduct in the fourth degree as detailed in counts one and two of the complaint.

I find that the defendant is guilty of criminal sexual conduct in the fourth degree as counts one and two that occurred in the county of Monroe, state of Michigan on or about April 14th, 2015.

(ECF No. 17-10, at 27-30.)

Following his conviction and sentence, Petitioner filed a claim of appeal. His appellate counsel filed a brief in the Michigan Court of Appeals that raised two claims:

> I. Defendant's convictions for criminal sexual conduct in the fourth degree must be vacated where the trial court failed to make findings of fact and conclusions of law consistent with a verdict of guilt where the prosecution failed to present sufficient evidence that defendant's actions were medically recognized as unethical or unacceptable.
>
> II. The trial court violated defendant's right to confront the witnesses against him by prohibiting him from cross-examining one of those witnesses for motive and bias. U.S. Const. Am VI, XIV.

The Michigan Court of Appeals affirmed in an unpublished opinion. *People v. Heiney*, No. 333363, 2017 WL 6624110, at *1 (Mich. Ct. App. Dec. 28, 2017). Petitioner appealed to the Michigan Supreme Court, but his application for leave to appeal was denied. *People v. Heiney*, 911 N.W.2d 708 (Mich. 2018)(Table).

Petitioner then returned to the trial court and through new counsel he filed a motion for relief from judgment that raised the following claims:

> I. Defendant was deprived of Michigan and federal constitutional rights to the effective assistance of trial counsel due to counsel's failure to file a timely notice of a proposed defense expert and consequent failure to call an expert at trial.
>
> II. Defendant was deprived of the effective assistance of appellate counsel in the appeal of right for the failure of appellate counsel to file a timely motion for new trial, or a motion to remand in the Court of Appeals, raising an ineffective assistance of trial counsel claim.

The trial court denied the motion for relief from judgment by opinion dated November 5, 2019. (ECF No. 17-19). Though the trial court cited Michigan Court Rule 6.50-8(D)(3), outlining the procedural limitations for raising claims on post-conviction review, the court found that the claims were without merit because Petitioner failed to demonstrate prejudice. (*Id.*, PageID.804-09.)

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. The court denied leave to appeal because Petitioner failed to establish that the trial court erred in denying the motion for relief from judgment. (ECF No. 17-23, PageID.968.) Petitioner filed an application for leave to appeal in the Michigan Supreme Court, but it was denied by standard form order. *People v. Heiney*, 957 N.W.2d 774 (Mich. 2021)(Table).

Heiney returned to the trial court again and filed a second motion for relief from judgment that raised the following claims:

> I. Petitioner was deprived of his right to a fair trial, due process, and equal protection provided in the United States and the State of Michigan Constitutions as established in *Bostock v. Clayton County*, Georgia 140 S. Ct. 1731 (2020).

> II. New exculpatory evidence makes a probable different result on retrial for petitioner; also new evidence demonstrates petitioner was deprived of his right to a fair trial, due process, and equal protection provided in the United State and the State of Michigan Constitutions; also new evidence provides petitioner a claim of actual innocence.

> III. Petitioner was deprived of his first amendment right to freedom of religion and has a significant possibility of being innocent.

The trial court denied the motion for relief from judgment because Petitioner

failed to demonstrate under Michigan Court Rule 6.508(G)(2) that he was permitted

to file a second post-conviction motion. (ECF No. 17-21, PageID.877-80.)

Petitioner appealed, and the Michigan Court of Appeals denied his application

for leave to appeal because Petitioner "failed to establish that the trial court erred in

denying the successive motion for relief from judgment. MCR 6.502(G)." (ECF No.

17-24, PageID.1320.) The Michigan Supreme Court likewise denied relief under

Rule 6.502(G). (ECF No. 17-29, PageID.2966.)[1]

## II

A § 2254 habeas petition is governed by the heightened standard of review set

forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. §

2254. To obtain relief, habeas petitioners who raise claims adjudicated by state

courts must "show that the relevant state-court 'decision' (1) 'was contrary to, or

involved an unreasonable application of, clearly established Federal law,' or (2) 'was

based on an unreasonable determination of the facts in light of the evidence

---

[1] Petitioner filed a motion for leave to file portions of the state court record that were
omitted from the Rule 5 materials by Respondent. (ECF No. 32.) Respondent's
answer to the motion conceded that portions of the record relevant to Petitioner's
claims were omitted, and it contended that other materials submitted by Petitioner
were duplicative to what Respondent has already filed. (ECF No. 40.) The Court will
therefore accept Petitioner's supplemental filings and grant Petitioner's motion, as
it appears Petitioner has not attempted to present the Court with any document that
was not made part of the state court record.

presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018)(quoting 28 U.S.C. § 2254(d)).

The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010)(internal citations and quotation marks omitted).

Ultimately, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Additionally, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III

### A

Petitioner first asserts that insufficient evidence was presented at trial to sustain his convictions. Specifically, he asserts that no evidence admitted at trial

indicated that the way he touched Gray's breasts was medically unethical or unacceptable, a necessary element to sustain a conviction under § 750.520e(1)(b)(iv). He asserts expert testimony or other medical evidence is the only way to establish that element. (ECF No. 13, PageID.97-98.)

The Michigan Court of Appeals, after reciting the constitutional standard governing sufficiency of the evidence claims and the elements of the offense, rejected the claim on the merits:

> The trial court concluded that defendant touched CG's breasts for a sexual purpose and engaged in a medical examination of CG that was medically recognized as unethical or unacceptable. More specifically, the trial court found that (1) CG did not complain of breast pain or discharge and (2) according to defendant the patient would have to complain of pain radiating from the breast or discharge from the breast in order to perform a breast examination. The trial court also noted the similar testimony of other witnesses.

> Defendant argues that the trial court's legal conclusion was erroneous and the verdict was not based on the evidence produced at trial because the prosecution offered no evidence that defendant "engaged in unethical or unacceptable medical practices," a required element under the statute. Defendant notes that no witness provided testimony regarding what constituted an unethical or unacceptable orthopedic physical examination for a patient with CG's symptoms.

> The Supreme Court in *People v. Baisden*, 482 Mich. 1000 (2008), held that medical testimony is not required in all prosecutions involving CSC in the medical context because "it is common knowledge that" some actions, such as "penile penetration constitute[] an unethical and unacceptable method of 'medical treatment.'" There is no case law determining whether it is common knowledge that squeezing breasts during an orthopedic examination for neck, back, and leg pain is an unethical and unacceptable method of medical treatment. However, in *People v. Hallak*, 310 Mich. App. 555, 565 (2015), rev'd

13

in part on other grounds 499 Mich. 879 (2016), the Court upheld the trial court's determination, based in part on expert testimony, that a physician touching the breast of a patient during an examination for a throat problem was "sufficient for the jury to conclude that the touching was not for a legitimate medical purpose."

Despite the lack of any expert testimony on the issue, there was some testimony from which the trial court could have inferred that squeezing CG's breasts was not an acceptable medical practice. First, CG testified that including her breasts in the examination seemed unusual and she was confused by the examination, which defendant did not explain. Second, three other women testified that defendant touched their bare breasts in various ways while purportedly examining them for pain. That all the women claimed to have pain, but not chest-related pain, and defendant accessed and manipulated their breasts in various inconsistent ways, is some evidence that squeezing CG's breasts was not a part of a standard examination for her pain. Third, and most significantly, there was medical testimony that examining a breast during an orthopedic examination without a complaint of pain or discharge in the area was not medically acceptable. According to Detective Bliss, defendant stated that he would only examine a breast when the presenting complaint was shoulder pain and there was a complaint such as pain radiating or discharge from the breast. Defendant denied that a breast exam was a normal part of his investigation. CG testified that she never complained of pain in her chest and, thus, by defendant's standards, a breast examination would not be a medically appropriate part of his examination.

Additionally, Bliss testified that defendant reported that he would examine both breasts for comparison, and that the examination would consist of palpitating the muscle above the breast tissue. Further, the chest palpation of the muscles of both sides of the chest that defendant described as medically appropriate was not the examination that CG described. The trial court found, consistent with the testimony, that CG was "quite definitive" in stating that she did not complain of breast pain or discharge and that defendant did not palpitate her breasts, but grabbed and squeezed.

Additionally, CG had interactions with three physicians for possible back surgeries after seeing defendant, and they performed

14

MRIs, a nerve study, and a bone study, rather than physical examinations. MS, KO, and SE all testified that they were familiar with breast examinations and noted that defendant's breast examinations were much different from other examinations because he did not have any of the women lay down with an arm behind the head, did not move in slow small circles (palpitate), did not explain what he was doing or always ask questions, and did not always examine both breasts or use the same examination on both breasts. Thus, there was evidence, when viewed in a light most favorable to the prosecutor, that defendant's touching of CG's breasts was a medical examination done in a manner that was medically recognized as unethical or unacceptable.

*Heiney*, 2017 WL 6624110, at *1-2 (footnote omitted).

Under clearly established Supreme Court law, the standard governing sufficiency of the evidence claims is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

A habeas court's "review of a state-court conviction for sufficiency of the evidence is very limited," *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018), because *Jackson* claims are "subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012)(per curiam). First, it is the responsibility of the fact finder at trial to decide what conclusions should be drawn from the evidence admitted. *Johnson*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because

the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Smith*, 565 U.S. at 2). The question under this standard is whether the state court determination that sufficient evidence was presented "was so insupportable as to fall below the threshold of bare rationality." *Johnson*, 566 U.S. 650, 656 (2012).

Petitioner asserts that without expert testimony, there was no basis for the trial court to conclude beyond a reasonable doubt that his conduct was medically unethical or unacceptable. There is no such categorical requirement under Michigan law. In interpreting § 520e(1)(b)(iv), the Michigan Supreme Court held that there are situations where a fact finder may refer to common knowledge that some actions are medically unethical or unacceptable without the aid of medical testimony. *See People v. Baisden*, 482 Mich. 1000 (2008)(expert testimony unnecessary for fact-finder to determine that physician's penile penetration of victim was unethical and unacceptable for purposes of medical treatment).

Petitioner asserts that *Baisden* created a limited exception that has no application to the facts presented here, where there is room for debate whether the conduct amounted to medically acceptable palpitation or medically unacceptable fondling for a sexual purpose. That sort of argument, however, has no place in a federal habeas proceeding. The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct

appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). "'What is essential to establish an element, like the question whether a given element is necessary, is a question of state law.'" *Sanford v. Yukins*, 288 F.3d 855, 861 (6th Cir. 2002)(quoting *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991).

Here, the Michigan Court of Appeals determined—as a matter of state law— that expert medical testimony was not necessary to establish the disputed element under the statute of conviction and the facts of this case. The state court's ruling essentially extended the rationale of *Baisden* to the situation presented here. Common knowledge can provide a sufficient basis for determining beyond a reasonable doubt that certain types of sexual contact are medically unethical or unacceptable. Certainly, that is true of penile penetration, and the state court found here that a certain manner of grabbing and squeezing of a woman's breasts may be too.

Given that expert testimony is not required under state law to establish the disputed element, the state court's finding that sufficient evidence was presented does not fall below the "threshold of bare rationality." *Johnson*, 566 U.S. at 656.

Both complainants demonstrated for the trial court, sitting as finding of fact, how Petitioner touched their breasts. With respect to Earnest, the court noted that

Petitioner used a palpating motion, and in light of her particular condition and complaints, the court directed a verdict in Petitioner's favor. The court contrasted that incident with what Gray described. She twice demonstrated for the court how Petitioner grabbed and squeezed her breasts. The court found: "Her testimony was quite definitive. He didn't palpate her breasts, but he grabbed it and squeezed. She used her hands to kind of show how that happened." (ECF No. 17-10, at 27-30.)

While perhaps not as obviously unacceptable as the facts in *Baisden*, it did not fall below the level of bare rationality for the court to rely on Gray's demonstration, her reaction in telling friends and family about what happened, and the similar-acts witnesses' testimony to determine that Petitioner touched Gray's breasts for purposes of sexual gratification in a way that was medically unethical or unacceptable. The state adjudication of this claim did not unreasonably apply the *Jackson* standard.

B

Petitioner's second claim asserts that he was denied the right to confront witnesses under the Sixth Amendment. Specifically, he asserts that he was prohibited from cross-examining Earnest about her finances, which he argues incentivized her to falsely accuse him to support a possible civil action.

The Michigan Court of Appeals rejected the claim on the merits. It found that Petitioner's confrontation rights were not violated because Petitioner was allowed to

18

ask Earnest whether she intended to file a civil action. When Earnest denied that she

intended to file suit, it rendered any personal financial difficulties irrelevant. *Heiney*,

2017 WL 6624110, at *3.

The Court of Appeals went on to find that any alleged error was nevertheless

harmless:

> Moreover, even where a defendant is denied his constitutional rights under the Sixth Amendment, reversal is not required if the error is harmless beyond a reasonable doubt. *People v. McPherson*, 263 Mich. App. 124, 131-132 (2004). An error is harmless beyond a reasonable doubt when it has had no effect on the verdict. *Morton*, 213 Mich. App. at 335–336. Here, the trial court granted defendant's motion for a directed verdict of acquittal regarding his actions with SE because it found a reasonable doubt that his actions were medically recognized as unethical or unacceptable based on her history of having a cyst removed from her breast. Thus, SE's testimony did not contribute to defendant's conviction.

*Id.*

Under established federal law, "[u]nconstitutional limitations on cross-

examination are normally subject to harmless-error analysis." *Hargrave v. McKee*,

248 F. App'x 718, 728 (6th Cir. 2007)(citing *Delaware v. Van Arsdall*, 475 U.S.

673, 684 (1986)). Where, as here, a state court determines that a constitutional error

at trial is harmless beyond a reasonable doubt, a federal court cannot grant habeas

relief without first applying both the test outlined in *Brecht v. Abrahamson*, 507 U.S.

619 (1993), and the test that Congress prescribed in AEDPA. *Brown v. Davenport*,

142 S. Ct. 1510, 1517 (2022).

*Brecht* requires a state prisoner in a federal habeas proceeding to show that the error had a "substantial and injurious effect or influence" on the outcome of his trial. 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). A "substantial and injurious effect or influence" means "actual prejudice." *Id*. at 637-38. Meanwhile, "AEDPA asks whether every fairminded jurist would agree that an error was prejudicial." *Brown*, 142 S. Ct. at 1525.

Petitioner has not shown that any error in limiting the cross-examination of Earnest had a substantial and injurious influence on the outcome of his case. As indicated, the trial court directed a verdict in favor of Petitioner with respect to Earnest. Meanwhile, the prohibited cross-examination had no connection to Gray, the charges that resulted in the conviction. Therefore, not every fairminded jurist would agree that the limitations placed on cross-examining Earnest about her finances resulted in prejudice. Petitioner fails to demonstrate entitlement to relief with respect to his claim.

## C

Petitioner's third and fourth claims assert that he was denied the effective assistance of counsel. He asserts that his trial attorney failed to call an expert witness to testify that his conduct was not medically unethical or unacceptable. He also asserts that his appellate counsel was ineffective for failing to raise the issue on direct appeal.

This claim was presented to the trial court in Petitioner's first motion for relief from judgment. The motion was supported with an affidavit from a physician, Dr. Corn. (ECF No. 17-13, PageID.717-20.) After reciting Michigan's procedural rules regarding entitlement to post-conviction review,[2] and the controlling constitutional standard governing claims of ineffective assistance of counsel, the trial court rejected the claims on the merits:

> The first assignment of error alleged by the Defendant is that he was deprived of his right to the effective assistance of counsel due to counsel's failure to file a timely notice of a proposed witness at trial. Defendant alleges he was prejudiced because there was a favorable expert witness with who counsel had conferred with and who was ready and available to testify. The case was tried without any expert testimony from either side regarding whether the examinations Defendant performed were medically proper or not. The expert witness Defendant alleges was ready and available to testify was not contacted for the Michigan trial, but only for the Ohio trial.

> Even if counsel's failure to file a timely notice of a proposed expert witness could be deemed an unreasonable performance, it did not cause prejudice to the Defendant. To show prejudice, the Defendant must show that counsel's errors "are so serious as to deprive him of a trial whose results is fair and reliable." *Lockhart v. Fretwell*, 506 U.S. 364 (1993). The Supreme Court in *People v. Baisden*, 482 Mich. 1000 (2008), held that medical testimony is not required in all prosecutions involving CSC in the medical context because "it is common knowledge that" some actions, such as "penile penetration constitute [] an unethical and unacceptable method of 'medical treatment.'" Despite

---

[2] Contrary to Respondent's assertion, the claim is not defaulted under Michigan Court Rule 6.508(D)(3). Though the trial court cited this procedural rule, it did not clearly and expressly rely on it as a basis for denying relief. Instead, the trial court's opinion suggests that it found Petitioner's claim lacked merit because he failed to demonstrate *Strickland* prejudice. *See Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010).

the lack of any expert testimony on the issue, there was some testimony from which the trial court inferred that squeezing CG's breasts was not an acceptable medical practice. First, CG testified that including her breasts in the examination seemed unusual and she was confused by the examination, which defendant did not explain. Second, three other women testified that defendant touched their bare breasts in various ways while purportedly examining them for pain. That all the women claimed to have pain, but no chest related pain, and defendant accessed and manipulated their breasts in various inconsistent ways, is some evidence that squeezing CG's breasts was not a part of a standard examination for her pain. Third, and most significantly, there was medical testimony that examining a breast during an orthopedic examination without a complaint of pain or discharge in the area was not medically acceptable. According to Detective Bliss, defendant stated that he would only examine a breast when the presenting complaint was shoulder pain and there was a complaint such as pain radiating or discharge from the breast. Defendant denied that a breast exam was a normal part of his investigation. CG testified that she never complained of pain in her chest and thus, by defendant's standards, a breast examination would not be a medically appropriate part of his examination.

The second assignment of error alleged by Defendant is that he was deprived of the effective assistance of appellate counsel due to counsel's failure to raise a claim on direct appeal that he was deprived of the effective assistance of trial counsel. The principal issue raised on appeal was that the evidence was insufficient to convict without expert testimony. Defendant claims appellate counsel should have filed a timely motion for a new trial or a motion to remand in the Court of Appeals for a claim that trial counsel was ineffective for failure to call an expert witness. An appellate attorney is not required to raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745 (1983). The decision to withhold issues on appeal must be done as a tactical choice made in sound professional judgment. Defendant has not shown a reasonable probability that, but for appellate counsel's mistake, the result would have been different. Defendant has failed to demonstrate actual prejudice, i.e., that the result would have been different had appellate attorney filed a motion for a new trial or a motion to remand claiming trial counsel was ineffective for the failure to call an expert witness.

(ECF No. 17-19, PageID.807-09.)

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*

Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The habeas petitioner bears the burden of demonstrating prejudice under this standard. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

The trial court reasonably decided that Petitioner failed to establish *Strickland* prejudice. The trial court, who also sat as trier of fact during the trial, was unpersuaded that the presentation of the proffered expert testimony would have

made a difference in the outcome. Though the court parroted much of the language used by the Court of Appeals in its decision on direct appeal, a reasonable basis exited for the trial court to find that Petitioner did not demonstrate *Strickland* prejudice.

Dr. Corn, a board-certified orthopedic surgeon, states in his affidavit that he was retained by Petitioner's Ohio attorney, and he reviewed materials for that case. He states that he was never contacted by Petitioner's Michigan trial counsel. In pertinent part, Corn asserts that with respect to the Michigan case, he "reviewed the testimony of both complainants," and that "[n]one of the treatment or examinations described by the complainant[s] at trial is medically recognized as unethical or unacceptable." He also asserts that it is "medically acceptable and ethical to examine the breast and chest area during an orthopedic examination without a complaint of pain or discharge in the area." (ECF No. 17-13, PageID.717-20.)

The trial court was unpersuaded that Corn's testimony would have made a difference. First, the trial court noted that Gray testified that including her breasts in the examination seemed unusual, it confused her, and Petitioner did not explain what he was doing. Corn's affidavit did not speak to this feature of her testimony. He did not assert that it is medially acceptable and ethical to touch a patient's breasts without explaining to her why he is doing so or that he is about to do so. Furthermore, while an examination of breasts may sometimes be acceptable as Corn describes as

24

a general proposition, Gray's particular description and demonstration of the episode with Petitioner persuaded the trial court to find that it was specifically performed for purposes of sexual gratification.

Next, the fact that Petitioner manipulated various other women's breasts in inconsistent ways, and without any complaint of referred pain, was also evidence persuading the trial court that the squeezing described by Gray was not a bone fide part of an examination for her pain. Corn did not address the testimony from the women about the variety of manners in which Petitioner touched their breasts.

Third, Petitioner's own statements to police in relation to the Ohio case was inconsistent with his examination of Gray. Corn did not address or explain this apparent inconsistency in his affidavit.

Now, whether the trial court was correct or not, and whether another judge confronted with the same issue would necessarily reach the same result, is not the question on federal habeas review. Here, the scope of review is significantly narrowed by AEDPA. The features relied upon by the trial court allowed it to reject Petitioner's claim without objectively unreasonably applying the *Strickland* prejudice standard.

Perhaps more significantly, there is another feature of the case that makes it especially difficult for a reviewing court to second-guess the trial court's no-prejudice finding. Though Corn stated that he reviewed the trial testimony, the fact

remains that he could not have seen Gray demonstrate the manner in which Petitioner grabbed and squeezed her breasts. It is unclear how Corn could determine from reading the transcripts that what Petitioner did was medically acceptable without seeing the demonstrations. The trial court, on the other hand, saw the demonstrations, and it stated during Gray's re-direct examination that the demonstrations were critical to resolving the issue presented by the case.

The fact that the trial court saw Gray testify taken together with the fact that it served as the fact finder at trial put it in a unique position to determine whether Petitioner was prejudiced by counsel's failure to present a defense expert. *See, e.g., Dunham v. Travis*, 313 F.3d 724, 732 (2nd Cir. 2002)(lack of prejudice confirmed when same trial judge who convicted petitioner at bench trial was unpersuaded by evidence later raised in post-conviction motion); *Price v. Romanowski*, 2008 U.S. Dist. LEXIS 4216, 2008 WL 186361 (E.D. Mich Jan. 22, 2008)(petitioner unable to show prejudice where same trial judge who convicted petitioner at bench trial reviewed petitioner's proposed evidence in a post-conviction motion, and indicated it would not have changed the outcome); *Robinson v. Wolfenbarger*, 2006 U.S. Dist. LEXIS 16452, 2006 WL 897333 at *3 (E.D. Mich. April 5, 2006)("petitioner is unable to show that he was prejudiced by counsel's alleged ineffectiveness in light of the fact that the same trial judge that convicted petitioner at his bench trial was 'unmoved' by this additional evidence when it was presented to him in petitioner's

post-trial motion."). Given the trial court's vantage point here, it would be difficult to characterize its determination that Petitioner was not prejudiced as involving an objectively unreasonable application of *Strickland*.

Petitioner also asserts that he was denied the effective assistance of appellate counsel for the failure to raise his trial counsel claim on direct review. Appellate counsel, however, cannot be ineffective for a failure to raise an issue on appeal that lacks merit. *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001); *Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008)("No prejudice flows from the failure to raise a meritless claim.").

Petitioner therefore fails to demonstrate entitlement to relief based on this claim.

## D

Petitioner's remaining claims are comprised of the claims he raised in his second motion for relief from judgment. Petitioner's fifth habeas claim is made up of several distinct arguments. He asserts that the prosecutor committed misconduct, that his trial and appellate counsel were ineffective, that prior-acts evidence was improperly admitted, that the result of civil suits related to his conduct proves that he is innocent, and that the opinions of additional medical experts and medical literature indicate that his examination of Gray was medically appropriate. Petitioner's sixth claim asserts that his rights were violated under the Supreme

Court's recent ruling in *Bostic v. Clayton County*, 140 S.Ct. 1731 (2020). Finally, Petitioner's seventh claim asserts that his First Amendment right to the free exercise of religion was violated by his prosecution.

Michigan Court Rule 6.502(G)(1) provides that except as outlined in subrule (G)(2) "one and only one motion for relief from judgment may be filed with regard to a conviction." Rule 6.502(G)(2) allows a defendant to file a second or subsequent motion in only two situations: if the motion is based on a retroactive change in law that occurred after the first motion for relief from judgment was filed, or if evidence discovered after the first such motion supports the claim. The court may waive the provisions of Rule 6.502(G) if it concludes that there is a significant possibility that the defendant is innocent of the crime. Rule 6.502(G)(2).

The Michigan courts rejected Petitioner's second motion for relief from judgment under Rule 6.502(G)(2), a valid state procedural rule at the time Petitioner filed his motion. *See Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (rejecting habeas relief for ineffective assistance of counsel claim procedurally defaulted under MCR 6.502(G)). (ECF No. 17-21, PageID.877-80.)

When a state court clearly and expressly relies on a state procedural rule to reject a claim, federal habeas review is barred unless the petitioner can demonstrate cause for the default and actual prejudice, or he can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Hodges v.*

*Colson*, 727 F.3d 517, 530 (6th Cir. 2013)(citing *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991)). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *See Hargrave-Thomas v. Yukins*, 374 F.3d 383, 389 (6th Cir. 2004)(citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)).

Petitioner cannot demonstrate good cause to excuse his default. To the extent that Petitioner is asserting ineffective assistance of appellate counsel as cause, the argument is meritless. Because there is no constitutional right to counsel on collateral review, ineffective assistance of appellate counsel does not excuse Petitioner's failure to fully present these claims in his first motion for relief from judgment. *Hannah v. Conley*, 49 F.3d 1193, 1196 (1995). Thus, Petitioner cannot blame his direct appeal counsel or his first post-conviction counsel for failing to raise these claims previously.

Petitioner does not adequately explain why his new claims were not presented in his first post-conviction review proceeding. While it is true that *Bostick* was not decided until 2020, after the first post-conviction motion was filed, that employment discrimination case has no application to Petitioner's criminal case. Petitioner does not explain how his sexual orientation as a heterosexual male was a factor in his prosecution. With respect to his eighth claim, Petitioner similarly fails to explain how his religious belief insulted him from a criminal sexual conduct prosecution.

Nor does he explain how such a theory was previously unavailable. Similarly, Petitioner does not demonstrate that the other trial errors complained of concern facts that were not available or through the exercise of due diligence could have been discovered by Petitioner when he filed his first motion for relief from judgment.

The claims raised in the second motion for relief from judgment are therefore procedurally defaulted and barred from review unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004). A prisoner asserting actual innocence to excuse a procedural default "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006)(quoting *Schlup*, 513 U.S. at 327). This standard is "demanding and permits review only in the 'extraordinary' case." *Id*. at 538 (quoting *Schlup*, 513 U.S. at 327). A credible actual-innocence claim "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

In support of his actual innocence claim, Petitioner submitted to the state court medical literature regarding breast examinations (ECF No. 18-1), the affidavits of two additional physicians (ECF  No.18-4, PageID.4399-4411), and records related to civil lawsuits that did not result in a judgment against him. None of these materials demonstrate the existence of an extraordinary case showing that it is more likely than not that no reasonable juror would have found Petitioner guilty. *House*, 547 U.S. at 536-37.

Neither the voluminous medical texts nor the new affidavits speak to Gray's demonstration of how Petitioner squeezed her breasts and how the trial court distinguished her description from Earnest's case in finding that it was done for purposes of sexual gratification. The fact that civil suits against Petitioner did not result in a judgment against him is not evidence showing that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. The standard for demonstrating a fundamental miscarriage of justice is high. Nothing in Petitioner's submissions undermines Gray's relatively straight-forward testimony about how Petitioner grabbed and squeezed her breasts and the trial court's specific factual finding that Petitioner did so for the purposes of sexual gratification. Review of these claims is therefore inexcusably barred.

IV

For the reasons stated, the Court concludes that Petitioner fails to establish entitlement to habeas relief with respect to any of his claims. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)(citation and internal quotation marks omitted). Petitioner has failed to make this showing. Accordingly, the Court **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

Dated:  August 21, 2023                    s/Sean F. Cox
                                            Sean F. Cox
                                            U. S. District Judge

I hereby certify that on August 21, 2023, the document above was served on counsel and/or the parties of record via electronic means and/or First Class Mail.

                                            s/J. McCoy
                                            Case Manager